Filed 9/9/15  In re N.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.S., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E062930 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1300538) |
| v. | OPINION |
| D.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer, Judge.

Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and

Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman and Julie

Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

On February 5, 2015, the juvenile court terminated defendant and appellant D.S.' (father) parental rights as to N.S (minor, born August 2013). On appeal, father contends the Riverside County Department of Public Social Services (the Department) failed to provide proper notification of the parents' potential Indian ancestry pursuant to the Indian Child Welfare Act (ICWA). We affirm.

FACTS AND PROCEDURAL HISTORY

On August 11, 2013, the Department received a referral alleging general neglect when father and paternal grandmother (PGM) entered mother's[1] home and attempted to abscond with minor while mother was sleeping. A physical altercation occurred between father, PGM, mother, and mother's landlord. Father "was making terrorist death threats to other residents of the home, and then he fled the scene when he learned the police had been called." He pulled a knife out and threatened to stab someone outside the residence as he fled.

Mother called the police. Law enforcement established an emergency protection order and advised mother to obtain legal custody and file for a restraining order against father. The landlord reported father had moved out of the home two months earlier. Mother alleged father stalked her after he moved out. She had already obtained a temporary restraining order in March 2013. The landlord reported father had spent the night two days earlier. Mother reported father had spent the previous night at her

---

[1] Mother is not a party to this appeal.

residence. Mother and the landlord reported father used to beat mother even when she was pregnant.

Mother had three prior unfounded child welfare investigations. Mother admitted a history of drug use including marijuana and experimentation with methamphetamine. A saliva test of mother reflected negative for drugs. A subsequent test also resulted in a negative result. Father had a criminal history including a prior conviction for battery, two convictions for possession of controlled substances, and a DUI.

The department left minor in mother's care. PGM requested placement of minor with her. The Department filed a Welfare and Institutions Code section 300[2] dependency petition alleging father had failed to intervene during the physical struggle over minor (B-1), father abused controlled substances and had a criminal history with drug related charges (B-2), father had unresolved mental health issues (B-3), mother failed to intervene during the physical struggle over minor (B-4), and mother had history of abusing controlled substances (B-5).

Mother, father, and PGM were present at the detention hearing on August 14, 2013. Both parents had apparently indicated Indian ancestry. The juvenile court queried, "You both indicate you may have Indian ancestry. [¶] If I can ask each of you separately if you have specific information as to what tribe it may be?" Mother responded that she had "no significant information . . . ." The court replied, "I'll take even insignificant

_____

[2] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

3

information."  Mother responded her "grandma just said that she's Indian.  She doesn't know what tribe."

The court asked father from what tribe he claimed ancestry.  Father responded, "I can find out through my uncle."  The court replied, "If you do, let the Department know, so we can be sure the tribe gets involved or give them notice to be involved.  Other than that, you have no other specific information?"  Father stated he did not.  The court found "ICWA may apply."

The juvenile court detained minor as to father, allowing minor to remain in mother's custody.  The court issued a temporary restraining order (TRO) against father and PGM as to contact with mother and minor with an exemption for supervised visits with father.  The court ordered parents to complete parental notification of Indian status forms (ICWA-020 forms).

On August 14, 2013, parents both filed ICWA-020 forms indicating each might have Indian ancestry.  Mother indicated her tribe was "unknown."  Father left blank the portion of the form requesting tribal affiliation.

In the jurisdiction and disposition report filed September 11, 2013, the social worker noted, "According to the mother . . . she may have Indian heritage, but no one in her family knows from which tribe she may have descended.  She has never been registered or affiliated with any Indian tribes or taken part in any Indian schools, services, or functions."

4

On September 11, 2013, the social worker mailed a notice of child custody proceeding for an Indian child form to the Sacramento Area Director of the Bureau of Indian Affairs (BIA). The social worker specified no tribes in the notice. Although information regarding father and mother was included in the notice, the social worker indicated no information was available for maternal and paternal grandparents and great grandparents.

At a hearing on September 16, 2013, mother, PGM, and paternal great grandmother (PGGM) were present. Father was not present. The department asked the court to "make a finding we do have good ICWA notice." No one interposed an objection. The court spoke with PGM regarding reissuance of the TRO. The court reissued the TRO, but permitted supervised visits between minor and PGM if such visits were assessed by the department as appropriate.

An addendum report filed October 10, 2013, reflected mother had participated in services, but father's whereabouts were unknown. At the jurisdiction and disposition hearing on October 16, 2013, neither parent was present; however, PGM and PGGM were. The department requested the court find good ICWA notice.

The juvenile court found the allegations in the petition true and sustained the petition. The court additionally found there "is good ICWA notice for this hearing." It further found ICWA may apply to the proceedings. The court dismissed the TRO as to PGM and let it lapse as to father without prejudice to the department or mother

5

requesting its reinstatement. The court removed minor from and ordered reunification services for father.

In an addendum report filed December 4, 2013, mother reported father had been calling her, dropping by her residence, and harassing her. On October 27, 2013, father had reportedly punched mother in the face. Mother tested negative for drugs on November 14, and 21, 2013. Father tested positive for amphetamine and marijuana. PGM had supervised visits with minor at the Department on October 30, and November 20, 2013.

On December 9, 2013, the department filed a section 387 supplemental petition apparently alleging mother had endangered minor by having contact with father.[3] The detention report reflects that, "According to the mother . . . she may have Indian heritage, but the tribe is unknown. She has never been registered or affiliated with any Indian tribe. She has never attended any Indian school or participated in any Native American activities." On December 5, 2013, mother had spent the night at father's house. On December 5, 2013, social workers conducted an emergency relative assessment of MGM, but her home did not meet their criteria. The social worker took minor into protective custody.

At the supplemental detention hearing on December 10, 2013, mother and PGM were present. Father was not present even though he had been ordered to appear the day

_____

[3] The supplemental petition makes no allegations. The supplemental detention report provided the basis for the supplemental petition, but still failed to explicitly elucidate the exact allegation.

6

before. The social worker's plan was to return minor to mother's custody once she relocated. The court detained minor but authorized her return to mother once deemed appropriate. The court found ICWA might apply and ordered mother to complete another ICWA-020 form. The court issued a three-year restraining order against father.

The supplemental jurisdiction and disposition report filed January 6, 2014, reflected minor remained out of mother's custody. The department's attorney requested the court find ICWA did not apply. Father had been arrested for criminal threats with respect to the initiating incident; he was placed on probation. On October 27, 2013, father was charged with infliction of corporal injury on a cohabitant and contempt of court. A bench warrant issued for father on January 2, 2014.

The report finally indicated the allegation against mother in the supplemental petition, that mother had failed to participate in her case plan, had returned to the home of father who had harassed her, and had further contact with father (S-1). Mother had moved into a domestic violence shelter. MGGM was being assessed for placement of minor.

At the hearing on January 13, 2014, mother and MGM were present. Upon the motion of the department's attorney, the court dismissed the supplemental petition without prejudice.

On March 6, 2014, an attorney for the department filed another supplemental petition.[4] Police reported an incident occurring between parents on February 28, 2014.

---

[4] This petition also fails to specify any allegations.

7

Mother reported calling PGM for a ride. When PGM arrived, father was in the car. Mother got into the car where father began arguing with her and punched her in the face several times. Mother texted PGM requesting that she not tell the officer what happened. PGM reported mother had spent the night at her house, at which father lived, the night before. PGM, father, and mother were out together all that day when father and mother engaged in an argument during which father hit mother several times.

The social worker spoke with both PGM and MGGM on March 4, 2014. A protective custody warrant was issued when mother refused to speak with the social worker. Parents were not present at the supplemental detention hearing on March 7, 2014. The court detained minor, found ICWA might apply, ordered parents to file additional ICWA-020 forms, and issued a bench warrant as to mother.

On March 19, 2014, the department's attorney filed the BIA's response to the notice of child custody proceedings regarding an Indian child. The notice, dated September 9, 2013, read, "The Bureau of Indian Affairs does not determine tribal eligibility nor do we maintain a comprehensive list of persons possessing Indian blood. This kind of information must be obtained from the tribe itself, if tribal affiliation can be determined. It is the responsibility of the person claiming Indian ancestry to establish tribal affiliation." The letter further reflected that "if additional information on tribal affiliation becomes available on the child[] cited above[,] you are advised to notify the appropriate tribe[s] directly of their right to intervene in the above proceedings."

On March 20, 2014, an attorney with the department filed an ex parte application for recall of the warrant. On March 7, 2014, the social worker had gone to the homes of both PGM and MGGM. With information she obtained, she tracked mother down to a motel where minor was eventually found and placed into protective custody. Mother admitted she had been evading the social worker. The court recalled the warrant.

In the supplemental jurisdiction and disposition and six-month review report filed April 3, 2014, the social worker recommended parents' reunification services be terminated. The report noted, again, that, "On December 26, 2013, [mother] stated that she has been told by her grandmother that she has Native American ancestry, but does not know tribal affiliation." An additional child welfare referral against mother had been received by the department on February 28, 2014, from mother's older child alleging mother had not been feeding or caring for minor and that mother had been witnessed shoplifting. The referral was deemed inconclusive.

The social worker spoke with PGM by phone on March 10, 2014, and met with MGGM on March 18, 2014. Mother had participated only marginally in reunification services and had completed none. Father had participated in no services. "On March 25, 2014, a Concurrent Planning Review (CPR) was held and the recommendation was adoption. The child will likely be placed with the maternal great-grandmother . . . ."

On April 10, 2014, another notice of child custody proceeding for Indian child was sent to the BIA. Again, while information on mother and father was reflected in the

9

notice, the notice indicated no information was available for the maternal or paternal grandparents or great-grandparents.

An addendum report filed May 2, 2014, reflected father had been incarcerated since April 14, 2014.  Multiple attempts to contact mother had proven ineffectual; mother's whereabouts were unknown.  At the May 7, 2014, jurisdiction and disposition hearing on the supplemental petition, mother was not present.  Father, PGM, and MGGM were present.  The juvenile court found the S-1 allegation true and terminated reunification services as to both parents.[5]

On July 31, 2014, PGM filed a section 388 petition requesting increased visitation or placement of minor with her.  On September 10, 2014, the department's attorney filed notice of BIA's latest response letter.  The letter dated April 22, 2014, reflected the same language contained in the previous letter.  It also read, "The notice received contains insufficient or limited information to determine Tribal Affiliation."

In an addendum report filed September 24, 2014, the social worker recommended the juvenile court deny PGM's section 388 petition.  Social workers had placed minor with MGGM on September 19, 2014.  On May 8, 2014, the social worker submitted a relative assessment of PGM for placement of minor.  She was awaiting the results of a live scan of paternal great grandfather (PGGF) who lived in the home.

---

[5]  Father filed a late notice of intent to file a writ petition, which was dismissed by this court on June 23, 2014, in case no. E061198.

On August 11, 2014, department personnel held a team decision meeting at the department with mother, PGM, paternal great-grandmother (PGGM), PGGF, and MGGM. MGGM was identified as minor's prospective adoptive parent. At the hearing set on September 29, 2014, for PGM's section 388 petition, PGM withdrew her petition without prejudice.

In the October 21, 2014, selection and implementation report, the social worker recommended parents' parental rights be terminated. The social worker reiterated that mother had previously indicated vague Native American Ancestry. On October 8, 2014, the social worker "spoke with the [MGGM] . . . regarding [the minor] and ICWA. The [MGGM] stated that [the minor] has no Indian heritage. The [MGGM] stated that there ha[ve] been 'rumors in the family regarding ICWA without any evidence.'" Numerous inquiries and searches had failed to result in departmental contact with mother. At the selection and implementation hearing on February 5, 2015, at which neither parent appeared, the juvenile court terminated parents' parental rights.

## DISCUSSION

Father contends department personnel provided statutorily insufficient notice regarding parents' ancestry to meet the requirements of ICWA. The department responds father forfeited the issue by failing to raise it below. We hold ICWA notice was not forfeited by father's failure to object. Nonetheless, although we agree the notice was lacking in information known to, or easily obtainable by, personnel at the department, we hold that any error in the sufficiency of the notice was harmless.

11

Notice of the proceedings is required to be sent whenever it is known or there is reason to know that an Indian child is involved. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.2, subd. (a); see *In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.) Notice serves a twofold purpose: "(1) it enables *the tribe* to investigate and determine whether the minor is an Indian child; and (2) it advises *the tribe* of the pending proceedings and its right to intervene or assume tribal jurisdiction." (*Desiree F.*, at p. 470, italics added.) No foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe (or the Bureau of Indian Affairs where the tribe is unknown) receives notice. (25 U.S.C. § 1912(a); *In re A.B.* (2008) 164 Cal.App.4th 832, 838.) "ICWA allows an Indian tribe to intervene in dependency proceedings, to 'protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . .' [Citation.] ICWA contains specific notice requirements that apply when the juvenile court knows or has reason to know that an Indian child is involved. [Citation.] The Indian tribe determines whether the child is an Indian child, and its determination is conclusive. [Citation.] The juvenile court '"needs only a suggestion of Indian ancestry to trigger the notice requirement."' [Citations.]" (*In re J.M.* (2012) 206 Cal.App.4th 375, 380.)

In addition to the child's name, and date and place of birth, if known, the notice is required to include the "name of the Indian tribe in which the child is a member or may be eligible for membership, if known." (§ 224.2, subd. (a)(5)(B).) The notice is also required to contain "[a]ll names known of the Indian child's biological parents,

12

grandparents, and great-grandparents, . . . as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(C).) "A 'social worker has "a duty to inquire about and obtain, if possible, all of the information about a child's family history"' required under regulations promulgated to enforce ICWA. [Citation.]" (*In re Robert A.* (2007) 147 Cal.App.4th 982, 989.) "ICWA notice requirements are strictly construed and must contain enough information to be meaningful. [Citation.]" (*In re J.M.* (2012) 206 Cal.App.4th 375, 380.)

Juvenile courts and child protective agencies have "'an affirmative and continuing duty to inquire whether a [dependent] child . . . is or may be an Indian child.' [Citation.]" (*In re H.B.* (2008) 161 Cal.App.4th 115, 121; § 224.3; Cal. Rules of Court, rule 5.481.) As soon as practicable, the social worker is required to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility. (§ 224.3, subd. (c); *In re Shane G.* (2008) 166 Cal.App.4th 1532, 1539; Cal. Rules of Court, rule 5.481(a)(4).) "'The [trial] court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation]. We review the trial court's findings for substantial evidence. [Citation.]' [Citation.]" (*In re Christian P.* (2012) 208 Cal.App.4th 437, 451.)

"A notice violation under ICWA is subject to harmless error analysis. [Citation.] 'An appellant seeking reversal for lack of proper ICWA notice must show a reasonable

13

probability that he or she would have obtained a more favorable result in the absence of the error.' [Citation.]" (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 715.)

"The generally accepted rule in dependency cases is that the forfeiture doctrine does not bar consideration of ICWA notice issues on appeal. [Citation.] 'As this court has held, "[t]he notice requirements serve the interests of the Indian tribes 'irrespective of the positions of the parents' and cannot be waived by the parent." [Citation.] A parent in a dependency proceeding is permitted to raise ICWA notice issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court.' [Citation.]" (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1195.)

Here, there is abundant evidence in the record that personnel from the department had ample information or access to information regarding MGM, MGGM, PGM, PGGM, and PGGF before they first sent notice to BIA on September 11, 2013; in the interim between the sending of the first and second notices, the latter on April 10, 2014; and/or after sending the second notice. Thus, substantial evidence fails to support the court's finding the ICWA notice was good since the indication in the notices that no information regarding parents' relatives was available was erroneous.

PGM was one of the individuals involved in the incident giving rise to the juvenile dependency proceedings. She initially requested placement of minor with her. PGM was present at the initial detention hearing on August 14, 2013, when the juvenile court directly queried parents about their purported Native American ancestry. The court issued a TRO against PGM on that date.

14

On September 16, 2013, PGM and PGGM were both present in court. The court spoke directly with PGM. On October 16, 2013, both PGM and PGGM were in court. PGM had supervised visits with minor at the department's offices on October 30, and November 20, 2013. On December 5, 2013, the department's social workers conducted an emergency placement relative assessment of MGGM. PGM was present at the hearing on December 10, 2013.

On January 6, 2014, the social worker indicated she was continuing to assess MGGM for placement of minor. MGM was present at the hearing on January 13, 2014. The social worker spoke with both PGM and MGGM on March 4, 2014. On March 7, 2014, the social worker went to the homes of both PGM and MGGM. After a planning meeting on March 25, 2014, the social worker determined that minor would likely be placed with MGGM. At the hearing on May 7, 2014, PGM and MGGM were present.

On May 8, 2014, the social worker submitted a relative assessment of PGM for placement of minor. PGGF apparently lived in the home and the social worker was awaiting the results of a live scan on him. Minor was placed with MGGM on September 19, 2014. PGM filed a section 388 petition on July 31, 2014. On August 11, 2014, department personnel held a meeting at which PGM, PGGM, PGGF, and MGGM were in attendance.

Here, the department personnel and the juvenile court failed the continuing duty to inquire about and obtain all of the information about minor's family history with respect to ICWA notification. Indeed, as noted above, department personnel had direct contact

with PGM, PGGM, PGGF, and MGGM. Some of the relatives appeared in court, some were being evaluated for placement, some were live scanned, some were contacted by phone, and some were contacted at home. Indeed, some of the relatives' addresses are included in the instant record. There is no indication the department personnel availed itself of any of these opportunities to inquire about the parent's purported Native American ancestry as to all the aforementioned relatives or those relatives' personal information prior to, in between, and after sending out both notices to BIA. Moreover, the department clearly failed to include some information it did have in the notices sent regarding some of the relatives' names and addresses. Thus, the ICWA notices sent failed to comply with ICWA requirements.

Nonetheless, father has failed to show there is a reasonable probability that he would have obtained a more favorable result in the absence of the error. All inquires with respect to parents indicated only that they purportedly had Indian ancestry of unknown tribal affiliation. MGGM later said the only evidence of Indian ancestry of which she was aware were rumors. She asserted minor had no Indian heritage. (*In re O.K.* (2003) 106 Cal.App.4th 152, 154, 157 [Grandmother's indication that "the mother 'may have Indian ancestry'" insufficient to trigger duty of further inquiry.].)

Even as to father's ancestry, there is no indication whatsoever that inclusion of his family's information in the BIA notifications would have resulted in a more favorable outcome. The BIA's letters expressly reflect the BIA "does not determine tribal eligibility nor do we maintain a comprehensive list of persons possessing Indian blood.

16

This kind of information must be obtained from the tribe itself, if tribal affiliation can be determined. It is the responsibility of the person claiming Indian ancestry to establish tribal affiliation." The letter further reflected that "if additional information on tribal affiliation becomes available on the child[] cited above[,] you are advised to notify the appropriate tribe[s] directly of their right to intervene in the above proceedings." Thus, further information regarding parents' heritage would not have allowed BIA to make a determination of Indian ancestry or tribal affiliation.

Even the language of the letters reading that the "notice received contains insufficient or limited information to determine Tribal Affiliation[]" cannot reasonably be interpreted as meaning that if BIA had parents' relatives' information, it could then make a determination of parents' Indian ancestry.[6] Rather, when read in context with the letter as a whole, it simply means that without at least some vague tribal indication from

---

[6] On August 13, 2015, father filed a notice indicating he would be arguing the applicability of *In re I.B.* (2015) ___ Cal.App.4th ___ [2015 Cal.App.LEXIS 686] to the instant case at oral argument. On September 1, 2015, he did so. We find *In re I.B.* factually distinguishable. Although, like this case, the department's personnel failed to provide adequate information in the initial ICWA, or in a subsequent notice, the parents in *I.B.* had provided the department with information regarding specific tribal affiliation from which they claimed ancestry. (*Id.* at pp. 4-5, 17.) One tribe, which was initially noticed, indicated that the notice did not contain sufficient information so that the tribe could make a determination of whether the child was an Indian child for purposes of ICWA. (*Id.* at pp. 8-17.) The court held that the department had failed to comply with its notification duty because the additional information obtained by the department was critical for *the tribes* to determine whether the child was eligible for membership. (*Id.* at p. 18.) Here, parents provided no information pertaining to ancestry from *any specific tribe*; thus, the additional information which should have been included in the notice would have made no difference because BIA would still not have been able to determine minor's tribal affiliation, if any.

17

parents or their relatives, specific tribal affiliation would be impossible to determine. There is no reasonable probability father would have obtained a more favorable result had the department included parents' relatives' information in the notices to BIA.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____<br>Acting P. J.

We concur:

KING_____
J.

MILLER_____
J.