Filed 10/22/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Benjamin M., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Guadalupe G., Defendant and Appellant. | E077137 (Super.Ct.Nos. J282488, J282489, J282490) OPINION |

APPEAL from the Superior Court of San Bernardino County. Erin K. Alexander, Judge. Conditionally reversed in part with directions.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Svetlana Kauper, Deputy County Counsel for Plaintiff and Respondent.

In this appeal following the termination of parental rights, the mother contends only that the social services agency failed to comply with the duty of initial inquiry imposed by state statutory provisions implementing the Indian Child Welfare Act of 1978

1

(25 U.S.C. § 1901 et seq.; ICWA). The social services agency concedes error but argues that it was harmless. Because the agency failed to investigate readily obtainable information tending to shed meaningful light on whether a child is an Indian child, we find the error prejudicial and conditionally reverse.[1]

BACKGROUND

In September 2019, plaintiff and respondent San Bernardino County Children and Family Services (CFS) filed petitions pursuant to section 300 for three children: five-year-old Timothy H., five-year-old Daniel H., and four-year-old Benjamin M. Defendant and appellant Guadalupe G. (Mother) is the mother of all three children. Felipe H. is the father of Timothy and Daniel. Alvaro M. is the father of Benjamin M. Only Alvaro's possible Indian ancestry is at issue in this appeal.[2]

Mother denied Indian ancestry. Alvaro—whom we will herein refer to as Father—has never made an appearance in the case. During the case's pendency, CFS was unable to locate or contact Father (whom Mother described as homeless), although it

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. In addition, because ICWA uses the term "Indian," we do the same for consistency, even though we recognize that other terms, such as "Native American" or "indigenous," are preferred by many.

[2] The juvenile court terminated all parental rights to the children in this case in April 2021. Mother appealed the termination orders as to all three children, but on appeal she raises only ICWA compliance relating to Alvaro's possible Indian ancestry, so we need not discuss the circumstances leading to the children's removal or their parents' reunification efforts, and we affirm the termination orders as to Timothy and Daniel, as Alvaro is not their father.

2

spoke with Father's sister-in-law[3] as well as persons CFS refers to as "collaterals."  In addition, Mother informed the juvenile court that she had visited Benjamin at Father's brother's house and knew that brother's address.  Later, in a declaration of due diligence, CFS stated that a contractor it had sent to investigate a potential address had spoken to one of Father's brothers.  Our record does not establish how many brothers Father has, so this could have been either the same brother Mother mentioned or a different brother.

At the combined jurisdiction and disposition hearing, the trial court found that ICWA did not apply.  The juvenile court's later order terminating Mother's parental rights did not mention ICWA, but the order was "necessarily premised on a current finding by the juvenile court that it had no reason to know [Benjamin] was an Indian child."  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10, italics omitted.)

ANALYSIS

Mother contends that the order terminating Benjamin's parental rights must be overturned due to CFS and the juvenile court's failure to comply with their duty of initial inquiry under Welfare and Institutions Code provisions implementing ICWA.[4]  CFS concedes error but contends that the error was harmless.  Thus, the sole issue before us is whether prejudice resulted from the failure to ask Father's known relatives about Father's

---

[3]  Mother and Father have never been married to each other.

[4]  Mother appealed the termination orders as to all three children, but the substance of her sole argument on appeal, which alleges the failure to inquire about Father's Indian ancestry, only pertains to Benjamin.

or Benjamin's possible Indian ancestry.  On this record, we agree with Mother that the error requires reversal.

"ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation. (25 U.S.C. § 1911(b)-(c); *Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 36.) Congress enacted ICWA to further the federal policy '"that, where possible, an Indian child should remain in the Indian community . . . ."'  (*Choctaw Indian Band v. Holyfield*, at p. 37.)"  (*In re W.B.* (2012) 55 Cal.4th 30, 48, fn. omitted.)

ICWA imposes notice requirements that are, at their heart, as much about effectuating the rights of Indian tribes as they are about the rights of the litigants already in a dependency case.  The purpose of ICWA notice requirements is to enable "a determination" of whether the child is an Indian child, such that an Indian tribe can exercise its ability to intervene in the proceeding (or assume jurisdiction) if so.  (*In re Isaiah W.*, *supra*, 1 Cal.5th at p. 8.)  ICWA thus requires notice to Indian tribes "in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court knows or has reason to know that an Indian child is involved.'"  (*In re Isaiah W.*, *supra*, at p. 8, quoting 25 U.S.C. § 1912(a); accord § 224.3, subd. (a).)  "[A]fter notice has been given, the child's tribe has 'a right to intervene at any point in the proceeding.'"  (*In re W.B.*, *supra*, 55 Cal.4th at 48, citing 25 U.S.C. § 1911(c).)

"'At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings[,]'" but "[i]f the tribal court does not assume jurisdiction, ICWA imposes various procedural and substantive requirements on the state court proceedings." (*In re W.B.*, *supra*, 55 Cal.4th at pp. 48-49.) These requirements include, among others, a finding, made prior to the termination of parental rights and "supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(f); see also *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339 [describing ICWA's "heightened requirements"].) Violations of ICWA "'render[] the dependency proceedings, including an adoption following termination of parental rights, vulnerable to collateral attack if the dependent child is, in fact, an Indian child.'" (*In re E.H.* (2018) 26 Cal.App.5th 1058, 1072; see 25 U.S.C. § 1914.)

Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry. (See, e.g., *In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The duty of initial inquiry arises, in part, from federal regulations under ICWA stating that "[s]tate courts must ask each participant in an . . . involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child" and that "[s]tate courts must instruct the parties to inform the court if they

5

subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R § 23.107(a).) Thus, the federal regulation places a duty on only "courts" to inquire or instruct "participants" and "parties" to a case.

State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) When the agency takes the child into temporary custody, its duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) State law also expressly requires the juvenile court to ask participants who appear before the court about the child's potential Indian status. (§ 224.2, subd. (c).)

If the initial inquiry gives the juvenile court or the agency "reason to believe" that an Indian child is involved, then the juvenile court and the agency have a duty to conduct "further inquiry," and if the court or the agency has "reason to know" an Indian child is involved, ICWA notices must be sent to the relevant tribes. (§§ 224.2, subd. (e) 1st par., 224.3, subd. (a); 25 U.S.C. § 1912(a).)

Here, neither the duty of further inquiry nor ICWA's notice provisions are at issue because no one has contended there is "reason to believe" B.M. is an Indian child. Rather, Mother's contention has to do with the effect of CFS's conceded failures during

6

its initial inquiry to gather information that *could have* triggered additional duties and "heightened requirements."  (*In re Jonathon S.*, *supra*, 129 Cal.App.4th at p. 339.)

Because the failure here concerned the *agency*'s duty of initial inquiry, only state law is involved.  Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial.  (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; *People v. Watson* (1956) 46 Cal.2d 818, 836 ["a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)

Conceptually, the issue is analogous to the state having a duty to disclose certain evidence but failing to even check if it has such material.  (Cf. *Brady v. Maryland* (1963) 373 U.S. 83, 87.)  Here, instead of a mere duty to disclose, the agency has a duty to gather information by conducting an initial inquiry, where the other party—here a parent "acting as a surrogate for the tribe" (*In re K.R.* (2018) 20 Cal.App.5th 701, 708)— has no similar obligation.  At any point, the agency could still gather the required information and make it known.  Until the agency does so, however, we cannot know what information an initial inquiry, properly conducted, might reveal.

Faced with this situation, an appellate court has three options.  First, the court could conclude that it is always reasonably probable that a result more favorable to the

appellant might be revealed by additional information.  This approach would require

reversal in all cases where the agency erred.  (Cf. *Pennsylvania v. Ritchie* (1987) 480

U.S. 39, 57-58 [ordering remand for review of certain unreviewed records even though it

was "impossible to say" whether information in them might be favorable to the convicted

criminal defendant].)  This approach might help encourage compliance with ICWA.  But

we do not think the approach is consistent with the state harmless error rule.  There are

cases where the agency erred but where, considering the entire record, it was obvious that

additional information would not have been meaningful to the inquiry.  This might occur

where the evidence already uncovered in the initial inquiry was sufficient for a reliable

determination.  (See, e.g., *In re J.M.* (2012) 206 Cal.App.4th 375, 382 [failure to include

names of great-great grandparents in ICWA notice was harmless where tribe's

membership criteria showed that the "children are disqualified from membership

irrespective of their great-great grandparents' possible membership in the tribe"].)

On the other hand, an appellate court could place on an opposing party the burden

of persuading the court that information that the agency failed to gather would likely have

favorable content.  In the ICWA context, however, we think that approach goes too far in

the other direction from automatic reversal.  The reason that the federal and state

legislative branches have required the ICWA inquiry is that in any case where

information about Indian ancestry is unknown, the probability of such ancestry is

reasonable enough to require the agency and court to pursue it.  Requiring a parent to

prove that the missing information would have demonstrated "reason to believe" would

8

effectively impose a duty on that parent to search for evidence that the Legislature has imposed on only the agency. A parent challenging ICWA compliance cannot always easily obtain the missing information, even when that missing information is about a parent's possible Indian ancestry.[5] Furthermore, the right at issue in the ICWA context is as much an *Indian tribe's* right to "a determination" of a child's Indian status as it is a right of any sort of favorable outcome for the litigants already in a dependency case. (*In re Isaiah W.*, *supra*, 1 Cal.5th at p. 8.) In this ICWA context, it would frustrate the statutory scheme if the harmlessness inquiry required proof of an actual outcome (that the parent may actually have Indian heritage), rather than meaningful proof relevant to the determination, whatever the outcome will be.

A third option is the one that we adopt. We believe that in ICWA cases, a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. This approach is consistent with the caselaw. In such cases, courts have generally avoided applying broad, rigid reversal rules and instead focused on whether the missing information was readily obtainable and whether such information would have shed meaningful light on the inquiry that the agency had the duty to make. (See *In re N.G.*

[5] Here, for example, Mother is raising Father's Indian status as an issue (not her own), Mother and Father have never been married, and it is unclear from the record whether Mother could easily contact Father if she wanted to.

(2018) 27 Cal.App.5th 474, 482 [reversal required where, among other things, agency never asked mother whether child may have maternal Indian ancestry and never asked her to complete a parental notification of Indian status form, despite being in contact with her], *In re K.R.*, *supra*, 20 Cal.App.5th at pp. 707-708 [failure of duty of further inquiry where it was "likely that the paternal grandfather would have had some information about his father's Indian heritage," where paternal great-grandfather was "'the other relative with purported Cherokee heritage,'" and there was no evidence that agency "attempted to contact the living great-grandmother in order to determine whether she had any relevant information"], *In re J.N.* (2006) 138 Cal.App.4th 450, 461 [error not harmless where it was "apparent from the record that mother was never asked whether she had any Indian ancestry" despite appearing before the court].) Under this approach, we require continued inquiry where the probability of obtaining meaningful information is reasonable in the context of ICWA.

Here, the agency in fact failed to obtain information that appears to have been both readily available and potentially meaningful. Although Father never appeared in the juvenile court and thus it never asked whether he had reason to believe that B.M. is an Indian child, CFS nevertheless failed its duty of inquiry by not asking "extended family members" (§ 224.2, subd. (b)) such as Father's brother and sister-in-law whether B.M. has Indian ancestry on his paternal side. Like the missing information in *In re N.G.*, *In re K.R.*, and *In re J.N.*, the missing information here was readily obtainable, as CFS had spoken to Father's sister-in-law and Father's brother and has the address (through

10

Mother) for either that brother or another one. Moreover, the information those relatives could have given would likely have shed meaningful light on whether there is reason to believe Benjamin is an Indian child. "Reason to believe" is broadly defined as "information *suggesting* that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1), italics added.) Father's brother's knowledge of his own Indian status would be suggestive of Father's status. While we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother.

In *In re A.C.* (2021) 65 Cal.App.5th 1060, the court applied a requirement some other cases have articulated as well: that in order to demonstrate prejudice, "a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she would, in good faith, have claimed some kind of Indian ancestry." (*Id.* at p. 1069; see also *In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388 ["Where the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage on appeal, a miscarriage of justice has not been established and reversal is not required"]; *In re N.E.* (2008) 160 Cal.App.4th 766, 769-771.) We believe, however, that the facts of this case show why such a requirement is contrary to the framework of ICWA and to the flexible, case-by-case approach that a harmless error analysis usually entails. (Cf. *Shinseki v. Sanders* (2009) 556 U.S. 396, 407 [rejecting Federal Circuit's framework of harmless error analysis at issue as "complex, rigid, and mandatory"].) Here, if read as saying a parent must claim she *herself* has Indian ancestry, the rule would

apply to deny Mother relief because she has disclaimed such ancestry. If read somewhat more broadly as saying a parent must claim the *child* has Indian ancestry, then Mother could make that claim based only on knowledge of Father's ancestry, which she has no legal duty or necessary logical reason to know. As the dissenting opinion in *In re A.C.* observed, "[p]arents in dependency cases are sometimes homeless or otherwise hard to find." (*In re A.C., supra*, at p. 1078 (dis. opn. of Menetrez, J.).) Furthermore, it is in part the tribe's right to a determination of a child's Indian ancestry, but the tribe is not present, and the agency is charged with obtaining information to make that right meaningful. And we must keep in mind that a collateral attack on a juvenile court judgment based on later discovered information can wreak havoc on a child's stability if the child turns out to have been an Indian child all along. (See 25 U.S.C. § 1914 [allowing "Indian child's tribe" to petition to invalidate action conducted in violation of certain ICWA provisions].) That risk would be greater, and even more unacceptable, if the agency foregoes basic inquiry into potentially meaningful, easily acquirable information. We accordingly decline to apply the rule from cases such as *In re A.C.* here.

Finally, we note that the record contains a report from CFS noting that it spoke to Father's "collaterals" in trying to locate him. This sort of imprecise terminology should be avoided. When assessing whether ICWA inquiry error was harmless, a court must know enough about the persons contacted to determine if the agency failed to inquire of persons who might have helpful information; murky documentation of the agency's efforts may support a reasonable inference that it failed to do so.

12

## DISPOSITION

The order terminating parental rights to Benjamin is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3 (and, if applicable, the notice provisions as well), consistent with this opinion. If, after completing the initial inquiry, neither CFS nor the court has reason to believe or to know that Benjamin is an Indian child, the order terminating parental rights to Benjamin shall be reinstated. If CFS or the court has reason to believe that Benjamin is an Indian child, the court shall proceed accordingly. The orders terminating parental rights to Timothy and Daniel are affirmed.

CERTIFIED FOR PUBLICATION

RAPHAEL
J.

We concur:

SLOUGH
Acting P. J.

MENETREZ
J.

13