[No. B235963. Second Dist., Div. Eight. May 23, 2012.]

In re J.M. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
V.M., Defendant and Appellant.

376

**COUNSEL**

Michael A. Salazar, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Acting County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

GRIMES, J.—

## SUMMARY

V.M. (mother) challenges the juvenile court's order terminating her parental rights to now four-year-old J.M. and three-year-old B.M. Father is not a party to this appeal. Mother contends that the order must be reversed because the Los Angeles County Department of Children and Family Services (the Department) failed to comply with the notice requirements of the Indian Child Welfare Act of 1978 (ICWA)[1] in that (1) the notices sent did not include the names of maternal great-great-grandparents, alleged by the maternal grandmother to have Papago Indian heritage, and (2) J.M. was not included in the notices. We disagree, finding the law does not require the inclusion of information about great-great-ancestors in ICWA notices, and any error in failing to include J.M. was harmless. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal concerns only the sufficiency of the ICWA notices, we will provide a brief overview of the facts relating to the dependency. In May 2010, the Department received a referral that mother left J.M. and B.M. home alone at night while she worked. The children were not detained at the beginning of the Department's investigation. At a team decisionmaking meeting, mother admitted to monthly use of methamphetamines. She agreed to participate in outpatient treatment, but the week following the team decisionmaking meeting, she was jailed for possessing drugs for sale, tried to hide the children from the Department, and did not seek medical attention when the children became sick with high fevers and were vomiting. J.M. and B.M. were therefore taken into protective custody and detained in July 2010. The Department alleged, among other things, that mother had unresolved substance abuse issues and neglected the children's medical needs, and that father did not provide for the children. Mother has a long history with the Department, having lost parental rights to J.M. and B.M.'s three older siblings due to her neglect and substance abuse. Therefore, the trial court denied mother reunification services.

Mother did not appear at any hearing concerning J.M. and B.M. except for two hearings to decide whether the court should terminate her parental rights, the first of which was held nearly eight months after the children were removed from her custody and placed in foster care. She was often out of contact with the Department, and she was not addressing her drug problem.

---

[1] Title 25 United States Code sections 1901 to 1963.

Meanwhile, the children were thriving in their foster placement. Their foster mother provided them with a safe and stable home, had an approved home study, and was committed to adopting them.

The July 2010 detention report noted that mother "believes she might have American Indian Ancestry, but stated she has no information on any tribal registration; therefore, she signed the 'Indian Ancestry Questionnaire' indicating that she has no information regarding any Indian Ancestry of the children . . . ." However, more than seven months later, mother appeared for the first time at the selection and implementation hearing (Welf. & Inst. Code, § 366.26). When termination of her parental rights was in issue, mother completed a "Parental Notification of Indian Status" form, advising the court that maternal grandmother was "full Apache." A maternal uncle, who was present at the hearing, reported that maternal grandmother never registered with the tribe, and that the Indian heritage was inadequate for registration.

The court continued the hearing and ordered the Department to contact maternal grandmother to inquire about possible Indian ancestry. On March 23, 2011, the Department provided the court with information from maternal grandmother about her Indian heritage. Maternal grandmother reported that her parents, the children's great-grandparents, O.M.M. and J.P.M., were registered members of the Apache, Yaqui, and Papago tribes. She also reported that her paternal grandparents, the children's great-great-grandparents, R.M. and P.P.M., were members of the Papago tribe. She knew the names of the children's great-grandparents and great-great-grandparents but nothing else about them, such as dates of birth or death. Based on this information, the court ordered the Department to provide ICWA notices.

On April 20, 2011, notices were sent concerning B.M. to various Apache and Yaqui tribes. In May 2011, notice was sent to the Papago tribe, known as the Tohono O'odham Nation. J.M.'s name was not included in the notices. The notices properly included all the necessary information known about B.M. and the children's mother, grandmother, and great-grandparents, but did not include the names of the great-great-grandparents (alleged to be members of the Papago tribe but not alleged to be members of the Apache or Yaqui tribes). Responses were received from the Tohono O'odham Nation (Papago tribe), the Pascua Yaqui tribe, and several Apache tribes, all reporting that B.M. was not eligible for enrollment.

On September 1, 2011, at the continued selection and implementation hearing, the trial court found J.M. and B.M. were not Indian children and that ICWA did not apply. The trial court terminated mother's parental rights, and this timely appeal followed.

## DISCUSSION

■ Mother challenges the order terminating her parental rights, contending there was inadequate ICWA notice because (1) the notice to the Papago tribe did not include the names of the great-great-grandparents and (2) the notices did not include information about J.M. Mother does not claim the Department failed to send notice to any tribe to which it was required to send notice, or that the notices were deficient in any other way. We find the notices satisfied the requirements of ICWA, and the omission of information about J.M. in the notices was harmless.

■ ICWA allows an Indian tribe to intervene in dependency proceedings, to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." (25 U.S.C. § 1902.) ICWA contains specific notice requirements that apply when the juvenile court knows or has reason to know that an Indian child is involved. (25 U.S.C. § 1912(a).) The Indian tribe determines whether the child is an Indian child, and its determination is conclusive. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 702 [43 Cal.Rptr.3d 171].) The juvenile court " 'needs only a suggestion of Indian ancestry to trigger the notice requirement.' " (*Id.* at p. 703.) Under ICWA, no foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe receives notice. (25 U.S.C. § 1912(a); see Welf. & Inst. Code, § 224.2, subd. (d).)

ICWA notice requirements are strictly construed and must contain enough information to be meaningful. (*In re Francisco W., supra,* 139 Cal.App.4th at p. 703.) In 2006, the Legislature enacted section 224.2 of the Welfare and Institutions Code (hereafter section 224.2), which "largely tracks the ICWA . . . ." (*Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262, 266 [77 Cal.Rptr.3d 628].) Section 224.2 provides that notice shall include "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(C).) Section 224.2 does *not* require that notice include information about great-great-grandparents.

■ Like section 224.2, federal regulations do not require the disclosure of information concerning ancestors more remote than great-grandparents. Federal regulations require the notice to include "[a]ll names known . . . of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents or Indian custodians, including maiden, married and former names or aliases; birth dates; places of birth and death; tribal enrollment numbers, and/or other identifying information." (25 C.F.R. § 23.11(d)(3) (2012); see 25 U.S.C. § 1912(a).)

Federal regulations, however, additionally provide that "[i]n order to establish tribal identity, it is necessary to provide as much information as is known on the Indian child's direct lineal ancestors *including, but not limited to*, the information delineated at paragraph (d)(1) through (4) of this section." (25 C.F.R. § 23.11(b) (2012), italics added.) We interpret this regulation to mean that notice must include, but is not limited to, the names, birth dates, places of birth and death, and tribal enrollment numbers of parents, grandparents and great-grandparents, and that *additional identifying information about these ancestors must be given if known.* We do not interpret this regulation to override the provision that notice is required to include information about ancestors no more remote than the dependent child's great-grandparents.

▮ Thorough compliance with ICWA is required. (See, e.g., *In re Francisco W., supra,* 139 Cal.App.4th at p. 703 ["It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the ones with the alleged Indian heritage."]; *In re Louis S.* (2004) 117 Cal.App.4th 622, 631 [12 Cal.Rptr.3d 110] ["The Agency must provide all known information to the tribe, particularly that of the person with the alleged Indian heritage."].) Despite the many cases using such broad language to describe the ICWA notice requirements, none of the cases cited by the parties in their briefs concerns the omission of information about ancestors more remote than great-grandparents. (See, e.g., *In re Francisco W.,* at p. 703 [insufficient information about child's *grandparents* provided in the notice]; *In re Louis S.,* at pp. 630–631 [notice was insufficient because of misspellings and the failure to include easily obtainable information about the *grandparent* and *great-grandparent*].) A decision is not authority for everything that is said in the opinion, only for the points actually considered and decided. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399].)

Mother has not cited any authority requiring the inclusion of great-great-grandparents in ICWA notices, nor does she articulate any reason why her children's Indian heritage might be established if notice to the Tohono O'odham Nation had included the names of the great-great-grandparents. The notice *did* include the children's immediate lineal ancestors—mother, grandparents, and great-grandparents—descendents of the great-great-grandparents who were purported members of the Papago tribe (the Tohono O'odham Nation). The Tohono O'odham Nation disclaimed the eligibility for membership of the children, their mother, their grandparents, and their great-grandparents, and mother offers no explanation why the Tohono O'odham Nation might have reached a different conclusion if it had known the names of the great-great-grandparents. (See Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481] [a brief must contain reasoned argument and legal authority to support its contentions or the court may treat the claim as waived].)

■ We have taken judicial notice of the Tohono O'odham Nation's tribal membership criteria, and we have determined that any error in failing to include the names of the great-great-grandparents was necessarily harmless, because these children are disqualified from membership irrespective of their great-great-grandparents' possible membership in the tribe. (*Yavapai-Apache Nation v. Iipay Nation of Santa Ysabel* (2011) 201 Cal.App.4th 190, 201, fn. 6 [135 Cal.Rptr.3d 42] ["tribal constitutions and ordinances can be proper subjects of judicial notice"]; *In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576 [79 Cal.Rptr.3d 189] ["where notice has been received by the tribe, . . . errors or omissions in the notice are reviewed under the harmless error standard"].) ■ Courts routinely take evidence of tribes' membership criteria in ICWA proceedings. (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1537 [83 Cal.Rptr.3d 513].) Tribes are the final arbiters of their membership. (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 72, fn. 32 [56 L.Ed.2d 106, 98 S.Ct. 1670] ["A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community."].)

The Tohono O'odham Nation Constitution provides that membership is limited to the census rolls of the Sells and Gila Bend Reservations as of January 1, 1937, and the San Xavier Reservation as of January 1, 1940, children born to resident members, and those with half Papago blood. (Constitution of the Tohono O'odham Nation (2006) <http://www.narf.org/nill/Constitutions/tohono/Constitution.pdf> [as of May 23, 2012].) J.M. and B.M. neither are children of resident members (the tribe responded that their mother, grandparents, and great-grandparents were not members), nor possess a sufficient quantum of Papago blood, even assuming their great-great-grandparents were full Papago Indian. We expect that the omission of information about a child's great-great-grandparents is rarely prejudicial when the identity of more immediate lineal ancestors is included in the ICWA notice, given the stringency of tribal membership requirements.

We have found one case, not cited by the parties, which addressed the omission of the name of a known great-great-grandparent from the ICWA notice. In *In re C.B.* (2010) 190 Cal.App.4th 102, 147 [117 Cal.Rptr.3d 846], the court summarily concluded the failure to include the name of the child's great-great-grandfather in the ICWA notice was reversible error, limiting its analysis to the citation of authority for the proposition that " ' "it is necessary to provide as much information as is known on the Indian child's direct lineal ancestors." ' " (*In re C.B.*, at p. 147, citing 25 C.F.R. § 23.11(b) (2012).) (The authority cited in *In re C.B.* did not concern information about a great-great-grandparent.) *In re C.B.* is factually distinguishable from this case. The omitted great-great-grandparent there might have provided a crucial missing link to the origin of the family's Indian heritage, due to his rumored marriage to an unidentified Indian woman. (*Id.* at pp. 145, 147.) In this case, there is

no indication that the names of the omitted great-great-grandparents would have provided any additional insight into the children's possible Papago Indian heritage.

This is not a case where there are gaps in the family tree, frustrating the Papago tribe's ability to meaningfully investigate the children's eligibility for membership in the Tohono O'odham Nation. The information required by section 224.2 was provided to the Tohono O'odham Nation, including the identities of the children's mother, maternal grandparents, and maternal great-grandparents, all of whom had the same surname and were alleged to be members of the Papago tribe. Nothing more was required. (The children's possible ancestry in the Apache and Yaqui tribes through their great-grandparents is not at issue in this appeal.)

We also find the failure to include information about J.M. in the ICWA notices was harmless, because B.M. and J.M are siblings, and both claim any Indian heritage through the same mother. Therefore, inclusion of J.M. in the notice could not possibly have yielded different results. (*In re E.W.* (2009) 170 Cal.App.4th 396, 400–402 [88 Cal.Rptr.3d 338] [any error in failing to include a sibling in the notice is harmless when there is no indication that inclusion in the notice would have produced different results].)

## DISPOSITION

The order is affirmed.

Bigelow, P. J., and Rubin, J., concurred.