Filed 10/23/20  In re C.E. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re C.E. et al., Persons Coming Under the Juvenile Court Law. | C091891 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. 53-004638, 53-004639) |
| Plaintiff and Respondent, | |
| v. | |
| A.C. et al., | |
| Defendants and Appellants. | |

Appellants A. (mother), J. (father of C.E.), and C. (father of I.E.) appeal from the juvenile court's orders terminating their parental rights over their respective children, C.E. and I.E. (minors).  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  The parents contend the

---

[1]  Undesignated statutory references are to the Welfare & Institutions Code.

1

court erred in finding the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)) did not apply. Respondent Placer County Department of Health and Human Services (Department) concedes the issue. We will accept the Department's concession as prudent and will reverse and remand for limited ICWA proceedings.

FACTUAL AND PROCEDURAL BACKGROUND[2]

The initial dependency petition was filed by the Department in May 2017 on behalf of two-year-old minor I.E. and one-month-old minor C.E. pursuant to section 300, subdivision (b) due to the abuse of controlled substances by mother and C. I.E. was initially removed from C. pursuant to a protective custody warrant and placed with mother. The juvenile court sustained the allegations in the petition and ordered I.E. removed from C.'s care and placed (together with his half-sibling C.E.) with mother under a plan of family maintenance. Within one month, the court granted the Department's request to allow C. to return home based on his progress and commitment to complete residential drug treatment.

Mother initially indicated she may have Indian heritage but indicated otherwise on her Parental Notification of Indian Status (form ICWA-020) and denied having any known Indian ancestry at the May 9, 2017 detention hearing. C. declared his possible Indian ancestry at the May 2017 detention hearing stating: "Yeah. We are not signed up for it. My dad is Indian though." When asked to explain, C. said, "Cherokee and Chocktaw from Oklahoma. But his grandmother didn't have a birth certificate or nothing. He tried to get it, but couldn't get it." C. confirmed he had no documentation and, when asked whether his father might have more information, he responded, "Kind of. But his grandma didn't have a birth certificate. She was raised in the tribe and stuff."

---

[2] Because the parents' sole claim challenges compliance with the ICWA, we limit the background summary to the ICWA-related facts and procedure unless otherwise relevant to the issue on appeal.

2

The court asked C. to get help from the paternal grandfather or other family members to obtain more information.  C. provided the social worker with the names of the paternal grandparents but was not questioned further about his Indian ancestry or asked to provide contact information for his relatives.

The Department sent ICWA notices to the Bureau of Indian Affairs (BIA), the Secretary of the Interior, the Cherokee Nation, the Choctaw Nation of Oklahoma, the Eastern Band of Cherokee Indians, the Jena Band of Choctaw Indians, the Mississippi Band of Choctaw Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma.  The notices contained names, addresses, and birthdates for mother and C.

The tribes responded to the ICWA notices, some referencing only C.E. and not I.E., but all stating the minors were neither enrolled nor eligible for membership.  The Department's status review report filed December 2017 indicated the ICWA did not apply.

In January 2018 the case was transferred to Lake County, mother and C.'s new county of residence.  The Lake County Department of Social Services (Lake County Department) reported, in February, May, and June 2018, that the ICWA did not apply.  Mother and C. both failed to participate in substance abuse treatment services, maintain regular contact with the social worker, or meet the developmental needs of I.E., and mother exposed both minors to J. (C.E.'s biological father) despite an earlier finding by the Lake County juvenile court that such contact would be detrimental to C.E.  As a result, the Lake County Department filed a supplemental petition on behalf of the two minors pursuant to section 300, subdivisions (b) and (g) due to mother's and C.'s untreated substance abuse and J.'s ongoing criminal and drug activity.  The minors were detained pursuant to a protective custody warrant and placed together in a foster home.  In its July 2018 report, the Lake County Department reported that mother and C. had previously claimed to have Indian ancestry, Placer County Department sent notices to the

3

tribes, and none of the tribes intervened. The report stated the Lake County Department would "follow-up and ensure that ICWA noticing requirements are met."

By September 2018 mother and C. had relocated back to Placer County and the minors had been placed with the maternal grandmother pursuant to an emergency relative placement. The Lake County juvenile court found I.E. may be an Indian child and there was reason to believe I.E. may be of Indian ancestry and ordered the Lake County Department to provide notice to all identified tribes and the BIA. The Lake County court sustained the amended allegations in the supplemental petition, ordered the minors detained from all parents, and ordered the case transferred back to Placer County. In its transfer order, the Lake County court noted it had not yet determined whether the ICWA was applicable.

In November 2018 the Placer County juvenile court ordered removal of the minors from mother and C. The Department reported that the ICWA did not apply. The report included the names of the paternal grandparents identified by C. The report also noted that J. was interviewed "and denied any specific cultural identification" and was "not requesting specific services." Mother reportedly told the social worker she had "a sliver of native background (she did not know which tribe)." During a meeting with the social worker the following month, C. confirmed he had Indian ancestry. A subsequent May 2019 report stated C. admitted "having native background and a referral to Sierra Native Alliance was made."

During an August 2019 hearing, C.'s counsel informed the court that C. "just informed me that he has been made aware that he has Native American heritage from his paternal family side." The court engaged in a lengthy conversation with C. regarding possible Indian heritage and instructed C. to obtain as much information as possible and provide any information not previously provided.

The court eventually terminated services due to the failure of mother and C. to comply with the case plan or maintain regular visitation and set the matter for a section

4

366.26 hearing. The minors were removed from the maternal grandmother's home and placed with the paternal aunt and uncle, and then relocated to a nonrelative foster home. The new caretaker expressed a desire to adopt the minors.

From August 2019 until March 2020, the Department reported that the ICWA did not apply. Following a contested section 366.26 hearing on March 20, 2020, during which the court neither discussed nor made any findings regarding the ICWA, the court found the minors adoptable and terminated parental rights.

## DISCUSSION

Each parent contends, or joins in the contention of the other parent(s), that the juvenile court and the Department failed their continuing duty of ICWA inquiry though there was a reason to believe the minors were Indian children. The Department concedes the issue and agrees that the matter must be reversed and remanded for further ICWA proceedings. As we shall explain, the Department's concession is proper.

"The juvenile court and social services agencies have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child. [Citation.]" (*In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) When the juvenile court knows or has reason to know that a child involved in a dependency proceeding is an Indian child, the ICWA requires that notice of the proceedings be given to any federally recognized Indian tribe of which the child might be a member or eligible for membership. (25 U.S.C. §§ 1903(8), 1912(a); *In re Robert A.* (2007) 147 Cal.App.4th 982, 989.) "At that point, the social worker is required, as soon as practicable, to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see Cal. Rules of Court, rule 5.481(a)(4)(A).)

ICWA notice must include all of the following information, if known: the child's name, birthplace, and birth date; the name of the tribe in which the child is enrolled or may be eligible for membership; names and addresses (including former addresses) of the child's parents, grandparents, and great-grandparents, and other identifying information; and a copy of the dependency petition. (§ 224.3, subd. (a)(5)(A)-(H); *In re D.W.* (2011) 193 Cal.App.4th 413, 417; *In re Mary G.* (2007) 151 Cal.App.4th 184, 209.)

Here, it is clear the Department made *some* ICWA inquiry of mother and C. The information provided by mother was scant and she gave conflicting information about whether she may have Indian heritage at all. J., who was periodically incarcerated throughout the proceedings, was never asked about possible Indian ancestry but for a notation in a November 2018 disposition report that he "denied any specific cultural identification." However, the information provided by C. was more substantial and included the identification of relatives (including the paternal grandparents) who might have information relative to the ICWA inquiry and several tribes with which those relatives might be affiliated.

While the Department sent notices to the BIA and six tribes that included names, addresses, and birthdates for mother and C., the notices did not contain any information about J. or any information identifying the paternal grandparents and great-grandparents related to C. Further, there was no evidence the Department made any effort to obtain additional information from mother, C., or J., and no indication it contacted or made any inquiry of the paternal grandparents despite the fact that C. provided identifying information for those relatives and specifically identified them as having some tribal affiliation. Section 224.2 imposes "an affirmative and continuing duty to inquire" whether a child is or may be an Indian child. (§ 224.2, subd. (a).) Continuing inquiry was particularly important here, where C. indicated his potential Indian ancestry was through the paternal grandparents but little information about those relatives was initially provided by C. "It is essential to provide the Indian tribe with all available information

6

about the child's ancestors, especially the ones with the alleged Indian heritage. [Citation.] Notice to the tribe must include available information about the maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment numbers; and other identifying data. [Citation.]" (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703; accord, *In re Louis S.* (2004) 117 Cal.App.4th 622, 631 ["The Agency must provide all known information to the tribe, particularly that of the person with the alleged Indian heritage"]; *In re J.M.* (2012) 206 Cal.App.4th 375, 381.)

Here, as the parents argue and the Department properly concedes, the ICWA notices failed to include known or readily ascertainable information, including the names of the paternal grandparents and great-grandparents related to C., and any identifying information about J.

The Department's duty of ICWA inquiry extends to the minor's extended family, if known. (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(4).) Here, information regarding the minors' extended family was known. Whether the Department contacted the paternal grandparents or attempted to speak with them is a mystery given the absence of any mention of such efforts in the record. That problem is compounded by the fact that the court never inquired about what efforts the Department made to obtain information from C.'s family members. "[O]nce there is sufficient information to believe that the child[] might be [an] Indian child[] within the meaning of ICWA and the California statutes, 'responsibility for compliance' with those statutes 'falls squarely and affirmatively' on *both* the social services agency and the court. [Citation.] Accordingly, the court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) While the affirmative and continuing duty of inquiry does not require the social services agency to conduct a comprehensive investigation into the minor's Indian status or to "cast about for Indian connections" (*In*

7

*re C.Y.* (2012) 208 Cal.App.4th 34, 42; *id.* at p. 39; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1161), the agency must include in its reports a discussion of what efforts it undertook to locate and interview family members who might have pertinent information and, "[i]n the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484; accord, *In re K.R., supra*, 20 Cal.App.5th at p. 709.) Here, the Department failed its duty of inquiry. Therefore, the notices sent by the Department were insufficient for purposes of the ICWA.

"[E]rrors in an ICWA notice are subject to review under a harmless error analysis. [Citation.]" (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1415.) If we conclude the juvenile court did not comply with the ICWA provisions, we "reverse only if the error is prejudicial." (*In re A.L.* (2015) 243 Cal.App.4th 628, 639.) Error is not presumed. It is the parents' obligation to present a record that affirmatively demonstrates error. (*In re D.W., supra*, 193 Cal.App.4th at pp. 417-418.) The parents have done so here. In the absence of evidence of the Department's efforts to fulfill its continuing duty of inquiry, we cannot say the failure of ICWA compliance was harmless. Therefore, we must remand for limited ICWA proceedings.

DISPOSITION

The juvenile court's orders terminating parental rights are reversed and the matter is remanded to the juvenile court for limited proceedings to determine compliance under the ICWA. If, at the conclusion of those proceedings, no tribe indicates either one of the minors is an Indian child within the meaning of the ICWA, then the juvenile court shall reinstate the orders terminating parental rights. In all other respects, the judgment is affirmed.

　　　　　　　　　　　　　　　　　　　／s／　　　　　　　　
　　　　　　　　　　　　　　　　　　　RAYE, P. J.

We concur:


　　　　／s／　　　　　　　
BLEASE, J.


　　　　／s／　　　　　　　
KRAUSE, J.

9