Filed 8/14/23  In re A.E. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.E., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E080566 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J288458, J288459, J288460) |
| v. | OPINION |
| K.D., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Vincent Uberti and Michele A. Cella, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Joseph R. Barrell, and Jessica L. Morgan, Deputy County Counsel for Plaintiff and Respondent.

In this appeal following the termination of parental rights, defendant and appellant K.D. (mother) contends only that the county welfare department failed to comply with California law implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).[1]  Relying on Welfare and Institutions Code, section 224.2, subdivision (b), she argues that the department failed to discharge its duty of initial inquiry because it did not ask several extended family members whether the children have any Indian ancestry.[2] The department, relying on *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 (*Robert F.*), argues that it had no duty to ask extended family members about possible Indian ancestry.  In the alternative, the department argues that any error was harmless under *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 735.

Pending further instruction from our Supreme Court, we reject the department's arguments based on *Robert F.* because we disagree with that case's interpretation of the relevant statutes.  We find the analysis of *In re Delila D.* (2023) 93 Cal.App.5th 953, (*Delila D.*) more persuasive.  Nevertheless, reversal is not warranted here, as the record does not indicate that there was "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)  On that basis, we affirm the order terminating parental rights.

---

[1]  "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2]  Undesignated statutory references are to the Welfare and Institutions Code.

FACTS

On March 5, 2021, plaintiff and respondent San Bernardino County Department of Children and Family Services (CFS) obtained a protective custody warrant to temporarily detain the children A.E. (born Jan. 2021), L.E. (born April 2017), and B.M. (born October 2012) from their parents. (See § 340, subd. (b) [allowing protective custody warrant to issue before a section 300 petition has been filed].) CFS filed juvenile dependency petitions four days later, alleging the children came within section 300, subdivisions (b) (failure to protect) and (j) (abuse of a sibling).

The children's presumed father, S.E., is not party to this appeal, though he participated in the dependency proceedings. According to mother, S.E. is not the biological father of B.M.; CFS was unable to locate the biological father, despite its attempts. Also, an older half-sibling of A.E., L.E., and B.M. is not at issue here; she was placed with her father, and her case was closed with custody orders.

The juvenile court sustained the section 300 petitions and declared A.E., L.E., and B.M. dependents of the court. The court found that ICWA did not apply.

During the dependency, mother and father repeatedly denied they had any Indian ancestry. According to mother, B.M.'s biological father is from India and has no Native American ancestry. CFS also asked several other family members about Indian ancestry, including two maternal aunts, a maternal uncle, the maternal grandparents, the paternal grandmother, a paternal great aunt, and a paternal aunt, and they all denied any Indian ancestry. The paternal grandfather has been out of contact with paternal grandmother and

father since father was a small child.  According to paternal grandmother, both father and paternal grandfather were born in Panama.

The record mentions two extended relatives that CFS did not contact.  A paternal uncle, with whom father had lived for a short time, is listed as part of father's support network, and a third maternal aunt, with whom mother was not "close" is noted.  The parties dispute whether these two extended family members were readily available to be asked about Indian ancestry.

Reunification efforts failed.  On November 29, 2022, the juvenile court terminated parental rights and ordered adoption as the children's permanent plans.

DISCUSSION

Relying on *Robert F.*, CFS contends that it had no duty to contact the paternal uncle and maternal aunt that mother identified as omitted from CFS's ICWA inquiry. There is no dispute that this conclusion would follow from *Robert F.*'s reasoning.  We are not persuaded, however, that its reasoning is correct.

Under California law, the juvenile court and county child welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child.  (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).)  "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.)  Only the first of these phases is at issue in this appeal.

4

In every dependency proceeding, the department has an initial duty to inquire into whether a child is an Indian child. (*In re J.S.* (2021) 62 Cal.App.5th 678, 686.) "The department's 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.'" (*Robert F.*, *supra*, 90 Cal.App.5th at p. 499; see § 224, subd. (a); Cal. Rules of Court, rule 5.481, subd. (a) (rule 5.481).) "In addition, '[f]ederal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child."'" (*Robert F.*, at pp. 499-500; see 25 C.F.R. § 23.107(a) (2022).) As well, state law requires the court to inquire ""'[a]t the first appearance in court of each party"'" by asking ""'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).)'" (*Robert F.*, at p. 500.)

"[U]nder subdivision (b) of section 224.2, '[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306,' the department's obligation includes asking the 'extended family members' about the child's Indian status."[3] (*Robert F.*, supra, 90 Cal.App.5th p. 500.) This language was added by Assembly Bill No. 3176 (2017-2018 Reg. Sess.), which made various ICWA related

---

[3] Section 224.2, subdivision (b), also applies when a child is placed in the temporary custody of a county probation department pursuant to section 307. But then it is the county probation department's duty of inquiry, and not the county welfare department's. (See § 224.2, subd. (b).)

changes to the Welfare and Institutions Code, effective January 1, 2019. (Stats. 2018, ch. 833 (A.B. 3176), § 5.) Similar language appears in rule 5.481 of the California Rules of Court, which the Judicial Council revised to implement section 224.2, subdivision (b): "The party seeking a foster-care placement, . . . termination of parental rights, preadoptive placement, or adoption must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, *extended family members*, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child . . . ." (rule 5.481 (italics added).)

Following the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342, 357-358 (*Adrian L.*), *Robert F.* equates the phrase "'placed into the temporary custody of a county welfare department pursuant to Section 306'" with exercise of the department's authority under section 306, subdivision (a)(2) "to take children into temporary custody 'without a warrant' in certain circumstances." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 497; see *Adrian L.*, *supra*, 86 Cal.App.5th at pp. 357-358 (conc. opn. of Kelley, J.).) According to *Robert F.* and the *Adrian L.* concurrence, "[a] department that takes a child into protective custody pursuant to a warrant does so under section 340, not section 306." (*Robert F.*, at p. 497.) After briefing in this case was completed, *In re Ja.O.* (2023) 91 Cal.App.5th 672, 680-681, review granted July 26, 2023, S280572 (*Ja.O.*), adopted the same reading of section 224.2, subdivision (b).

Recently, however, *Delila D.* declined to follow *Robert F.*, finding its holding "contrary to both the letter and spirit of [A.B. 3176]." (*Delila D.*, *supra*, 93 Cal.App.5th

6

at p. 962.) Instead, *Delila D.* concluded "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*Ibid.*) Under *Delila D.*'s analysis of section 224.2, subdivisions (a) and (b), together with rule 5.481, social workers have "a duty of initial inquiry that begins at first contact, lasts throughout the proceeding, and includes 'but is not limited to' the reporting party, the child's parents and extended family members, and others who have an interest in the child, as those individuals become available during the case." (*Id.* at p. 966.)

This conflict in authority is currently under review by our Supreme Court, with *In re Ja.O.* as the lead case. We find *Delila D.*'s thoughtful discussion of the statutory language and legislative history persuasive, and adopt its reasoning and conclusions pending our Supreme Court's resolution of the conflict.

Applying *Delila D.* to this case, CFS's initial duty of inquiry—including the duty to inquire of extended family members who become available—was triggered when a social worker received the children from the peace officer who executed the detention warrant and CFS then maintained the children in temporary custody, as authorized by section 306, subdivision (a)(1). We decline to follow the reasoning of *Ja.O.*, *Robert F.* or the *Adrian L.* concurrence that would lead to a different result.

Our next questions, then, are whether CFS satisfied that expanded duty of inquiry or, in the alternative, if any error in doing so was harmless. We need only answer the second of these questions, as we find any arguable error harmless.

7

There are multiple approaches to assessing harmlessness in the ICWA context, and the issue is currently under review by our Supreme Court. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777-782, review granted Sept. 21, 2022, S275578).) We will apply the approach we described in *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 739. That is, we will find prejudice when an agency "fail[s] to investigate readily obtainable information tending to shed meaningful light on whether a child is an Indian child." (*Ibid.*) Even where the agency has erred, however, it may be that, "considering the entire record, it was obvious that additional information would not have been meaningful to the inquiry." (*Id.* at p. 743) "This might occur where the evidence already uncovered in the initial inquiry was sufficient for a reliable determination." (*Ibid.*)

CFS did not contact two extended relatives of the children, a paternal uncle and a maternal aunt. The parties dispute whether CFS reasonably could have contacted those relatives, such that any information they may have should be considered readily obtainable. CFS notes that, although father lived briefly with the paternal uncle, and the paternal uncle was listed as part of father's support system, the record does not reflect a current address or telephone for the paternal uncle. The maternal aunt is mentioned by mother as the only one of her siblings with whom she is not "close," and whom she does not see often. Again, the record does not reflect that a current address or telephone for that maternal aunt was available. But mother notes that the record also does not affirmatively reflect that CFS made any effort to obtain the contact information of either of these relatives.

8

Assuming that CFS readily could have and should have obtained these relatives' contact information, we must determine whether there was any probability of obtaining meaningful information from them. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743.) In our view, there was not. CFS asked an array of relatives on both the maternal and paternal side of the family about Indian ancestry. Mother, two maternal aunts, a maternal uncle, and both maternal grandparents all denied any Indian ancestry. Father, a paternal aunt, paternal grandmother, and a paternal great aunt all denied any Indian ancestry. Paternal grandfather was unavailable to interview, but information about him from paternal grandmother—that he was born in Panama, like father—tends to confirm those denials of Indian ancestry by the paternal relatives.

CFS's investigation did not quite exclude the possibility of Indian ancestry, for example, by uncovering information that affirmatively shows the children were disqualified from tribal membership. (Cf. *In re J.M.* (2012) 206 Cal.App.4th 375, 382 [tribe's membership criteria showed children disqualified from membership "irrespective of their great-great grandparents' possible membership in the tribe"].) Nevertheless, the department made a substantial inquiry here, covering quite a few relatives from both sides of the family. Taken in the context of the entire record, the substantial inquiry that the department conducted was sufficient to make it obvious that the two relatives not contacted had no meaningful information to provide. It is certainly plausible that a parent may not know of his or her own ancestry, while a sibling of that parent is better informed. (See *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745 [finding prejudicial error in

9

failure to inquire of father's brother].) The absence of inquiry of a single relative could, in some circumstances, be necessary to shed meaningful light on whether a child is an Indian child. Absent unusual circumstances, however, it is not plausible that one sibling of a parent (the child's aunt or uncle) would have meaningful information about Indian ancestry that multiple other siblings, as well as *their* parents (the child's grandparents) and other relatives from that older generation (the child's great aunts and uncles) do not have. (See *In re Rylei S.* (2022) 81 Cal.App.5th 309, 325 [discussing hypothetical where agency "interviews the maternal grandfather; several, but not all of his four siblings, and the maternal grandfather's surviving parent, none of whom indicates the family has any Indian ancestry," and concluding that the "failure to interview the grandfather's remaining siblings would certainly be harmless absent some additional unusual circumstance"].)

We find any arguable error by CFS in failing to contact, or attempt to contact, extended relatives of the children was harmless under the standard in *Benjamin M.*

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.

10