*See Dissenting Opinion*

Filed 8/30/23  In re B.B. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.B., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080946 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ2100249) |
| v. | OPINION |
| H.B. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton,

Judge.  Conditionally affirmed and remanded with directions.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant

and Appellant H.B.

William Hook, under appointment by the Court of Appeal, for Defendant and

Appellant B.W.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel for Plaintiff and Respondent.

In this appeal following the termination of parental rights, defendants and appellants H.B. (father) and B.W. (mother) contend only that the county welfare department failed to comply with California law implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).[1] Relying on Welfare and Institutions Code, section 224.2, subdivision (b), the parents argue the department failed to discharge its duty of initial inquiry because it did not ask several extended family members whether the children have any Indian ancestry.[2] The department, relying on *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 (*Robert F.*) and *In re Ja.O.* (2023) 91 Cal.App.5th 672, 680-681, review granted July 26, 2023, S280572 (*Ja.O.*), argues that it had no duty to ask extended family members about possible Indian ancestry. In the alternative, the department asserts that any error was harmless.

Absent further instruction from our Supreme Court, we reject the department's arguments based on *Robert F.* and *Ja.O.* because we disagree with those cases' interpretation of the relevant statutes. We find the analysis of *In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*) more persuasive. We disagree with the department that the

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2] Undesignated statutory references are to the Welfare and Institutions Code.

error was harmless, as the record indicates that there was "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) The department's arguments that *Benjamin M.* was wrongly decided are unpersuasive. We conditionally affirm and remand with directions.

## BACKGROUND

In June 2021, plaintiff and respondent Riverside County Department of Public Social Services (the department) obtained a protective custody warrant to temporarily detain B.B. (born May 2015) from parents. Several days later, the department filed a dependency petition, alleging that B.B. came within section 300, subdivision (b)(1) (failure to protect). The juvenile court ordered B.B. detained out of parental care.

In March 2022, while reunification efforts as to B.B. were ongoing, his sister A.B. was born. Shortly thereafter, the department obtained a protective custody warrant to temporarily detain A.B. from parents, and it filed a dependency petition alleging that she came within section 300, subdivision (b)(1) (failure to protect) and (j) (abuse of sibling). The juvenile court ordered A.B., too, detained out of parental care.

Mother and father, as well as the maternal grandmother, each denied any Indian ancestry. During the dependency, the department interviewed a paternal first cousin, a paternal aunt attended a hearing, and the department obtained contact information for the paternal grandmother. There is no evidence, however, that the department asked these three extended relatives whether the children are or may be Indian children.

3

In February 2023, after reunification efforts had failed, the juvenile court terminated parental rights as to both B.B. and A.B.

DISCUSSION

Relying on *Robert F.* and *Ja.O.*, the department contends that it had no duty to contact the paternal extended relatives omitted from the ICWA inquiry. This conclusion follows from those cases' reasoning. We are not persuaded, however, that the reasoning of those cases is correct.

Under California law, the juvenile court and county child welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.) Only the first of these phases is at issue in this appeal.

In every dependency proceeding, the department has an initial duty to inquire into whether a child is an Indian child. (*In re J.S.* (2021) 62 Cal.App.5th 678, 686.) "The department's 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.'" (*Robert F.*, *supra*, 90 Cal.App.5th at p. 499; see § 224, subd. (a); Cal. Rules of Court, rule 5.481, subd. (a) (rule 5.481).) "In addition, '[f]ederal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that

4

the child is an Indian child.""'" (*Robert F.*, at pp. 499-500; see 25 C.F.R. § 23.107(a) (2022).)  As well, state law requires the court to inquire "'"[a]t the first appearance in court of each party"'" by asking "'"each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).)'" (*Robert F.*, at p. 500.)

"[U]nder subdivision (b) of section 224.2, '[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306,' the department's obligation includes asking the 'extended family members' about the child's Indian status."[3] (*Robert F.*, *supra*, 90 Cal.App.5th at p. 500.)  This language was added by Assembly Bill No. 3176 (2017-2018 Reg. Sess.), which made various ICWA related changes to the Welfare and Institutions Code, effective January 1, 2019.  (Stats. 2018, ch. 833 (A.B. 3176), § 5.)  Similar language appears in rule 5.481 of the California Rules of Court, which the Judicial Council revised to implement section 224.2, subdivision (b): "The party seeking a foster-care placement, . . . termination of parental rights, preadoptive placement, or adoption must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, *extended family members*, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child . . . ." (rule 5.481 (italics added).)

---

[3]  Section 224.2, subdivision (b), also applies when a child is placed in the temporary custody of a county probation department pursuant to section 307.  But then it is the county probation department's duty of inquiry, and not the county welfare department's.  (See § 224.2, subd. (b).)

5

Following the concurring opinion in *In re Adrian L.* (2022) 86 Cal.App.5th 342, 357-358 (*Adrian L.*), *Robert F.* equates the phrase "'placed into the temporary custody of a county welfare department pursuant to Section 306'" with exercise of the department's authority under section 306, subdivision (a)(2) "to take children into temporary custody 'without a warrant' in certain circumstances." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 497; see *Adrian L.*, *supra*, 86 Cal.App.5th at pp. 357-358 (conc. opn. of Kelley, J.).) According to *Robert F.* and the *Adrian L.* concurrence, "[a] department that takes a child into protective custody pursuant to a warrant does so under section 340, not section 306." (*Robert F.*, at p. 497.) *Ja.O.* adopted the same reading of section 224.2, subdivision (b). (*Ja.O.*, *supra*, 91 Cal.App.5th at pp. 680-681.)

Recently, however, *Delila D.* declined to follow *Robert F.*, finding its holding "contrary to both the letter and spirit of [A.B.3176]." (*Delila D.*, *supra*, 93 Cal.App.5th at p. 962.) Instead, *Delila D.* concluded "there is only one duty of initial inquiry, and that duty encompasses available extended family members no matter how the child is initially removed from home." (*Ibid.*) Under *Delila D.*'s analysis of section 224.2, subdivisions (a) and (b), together with rule 5.481, social workers have "a duty of initial inquiry that begins at first contact, lasts throughout the proceeding, and includes 'but is not limited to' the reporting party, the child's parents and extended family members, and others who have an interest in the child, as those individuals become available during the case." (*Delila D.*, at p. 966.)

This conflict in authority is currently under review by our Supreme Court, with *In re Ja.O.* as the lead case. We find *Delila D.*'s thoughtful discussion of the statutory language and legislative history persuasive, and adopt its reasoning and conclusions, pending our Supreme Court's resolution of the conflict.

Applying *Delila D.* to this case, the department's initial duty of inquiry—including the ongoing duty to inquire of extended family members who become available during the case—was triggered when a social worker received the children after execution of the detention warrant and the department then maintained the children in temporary custody, as authorized by section 306, subdivision (a)(1). We decline to follow the reasoning of *Ja.O.*, *Robert F.*, or the *Adrian L.* concurrence that would lead to a different result.

Our next questions, then, are whether the department satisfied that expanded duty of inquiry and, if not, whether failing to do so was harmless. The department has not disputed that the first question must be answered negatively; nothing in the record shows the three extended relatives were ever asked about the children's Indian status, or that they were unavailable to be asked. The department argues that the failure to inquire of these relatives should be considered harmless error. We are not persuaded.

There are multiple approaches to assessing harmlessness in the ICWA context, and the issue is currently under review by our Supreme Court. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777-782, review granted Sept. 21, 2022, S275578).) We will apply the approach we described in *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 739. That is, we will

find prejudice when an agency "fail[s] to investigate readily obtainable information tending to shed meaningful light on whether a child is an Indian child." (*Ibid.*) Even where the agency has erred, however, it may be that, "considering the entire record, it was obvious that additional information would not have been meaningful to the inquiry." (*Id.* at p. 743) "This might occur where the evidence already uncovered in the initial inquiry was sufficient for a reliable determination." (*Ibid.*)

The department argues that *Benjamin M.* was wrongly decided, asserting that *Benjamin M.*, as applied, "essentially" amounts to "a reversible per se standard." Not so. There are circumstances where the record could demonstrate that the initial inquiry was sufficient for a reliable determination, even though there was an erroneous failure to inquire of some extended relatives. For example, in theory, the department could have uncovered information affirmatively showing the children were disqualified from tribal membership. (Cf. *In re J.M.* (2012) 206 Cal.App.4th 375, 382 [tribe's membership criteria showed children disqualified from membership "irrespective of their great-great grandparents' possible membership in the tribe"].) In some circumstances, a thorough, but not perfect, inquiry can suffice for a reliable determination, despite some omissions. (See *In re Rylei S.* (2022) 81 Cal.App.5th 309, 325 [discussing hypothetical where agency "interviews the maternal grandfather; several, but not all of his four siblings; and the maternal grandfather's surviving parent, none of whom indicates the family has any Indian ancestry," and concluding that the "failure to interview the grandfather's

8

remaining siblings would certainly be harmless absent some additional unusual circumstance"].)  The record in this case, however, demonstrates nothing of the sort.

The department argues that father's own denial of Indian status should suffice, since there is "nothing in the record to suggest that the father was unaware of his own ancestry."  This line of argument ignores that a parent may deny Indian ancestry, but an interview with an extended family member may nevertheless reveal such ancestry.  (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 [to accept a parent's denial of any knowledge of Indian ancestry, without further inquiry, "ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe"]; *In re T.G.* (2020) 58 Cal.App.5th 275, 289 ["Oral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation [or lack thereof] is not accurate"].)  We do not "second guess" the trial court's determination that father's "multiple statements about his ancestry were credible," as the department suggests.  On the contrary, we have no doubt father told the truth about his ancestry, so far as he knows.  Rather, we reject the notion that a reliable determination of a child's Indian ancestry can or should be limited to the parents' own knowledge when other relatives are readily available for inquiry and may have different information.

DISPOSITION

The orders terminating parental rights to B.B. and A.B. are conditionally affirmed. We remand to the juvenile court for the department and the court to comply with the inquiry and notice provisions of ICWA and California law consistent with this opinion, including inquiring of extended family members. If the court finds the children are Indian children, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law. If not, the court's original section 366.26 orders will remain in effect.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

I concur:

McKINSTER _____
Acting P. J.

[*In re B.B.*, E080946]

MILLER, J., Dissenting

I respectfully dissent to the majority opinion. B.W. (Mother) and H.B. (Father) contend the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) inquiry was insufficient because the Riverside County Department of Public Social Services (the Department) failed to ask extended relatives of B.B. and A.B. about possible Indian ancestry. Mother and Father assert the Department had a duty to question extended relatives under Welfare and Institutions Code section 224.2, subdivision (b), and *In re Delila D.* (2023) 93 Cal.App.5th 953.

I believe *In re Robert F.* (2023) 90 Cal.App.5th 492, 500-501, correctly concluded that the Department's duty to initially question extended relatives is only triggered when children are removed without protective custody warrants. Because B.B. and A.B. were removed with protective custody warrants, the Department did not have an initial duty to question extended relatives about possible Indian ancestry. I would affirm.

MILLER               

J.

1