Filed 3/14/24  In re Perla C. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re PERLA C., a Person Coming Under the Juvenile Court Law. | B328768 (Los Angeles County Super. Ct. No. 22CCJP00949A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MICHELLE P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge. Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Michelle P. (mother) appeals the juvenile court's order terminating her parental rights over her eighth child, Perla C. Mother argues that the court did not comply with its initial duty of inquiring into Perla's possible Indian heritage under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.).[1] We conclude that there was no error and, alternatively, that any error was harmless. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts Pertinent to Dependency Jurisdiction

Mother gave birth to Perla in May 2018. Perla's father is Hugo C. (father).

In March 2022, mother tested positive for amphetamines and methamphetamine. At that time, father was incarcerated on an eight-year sentence for assaulting a peace officer with a deadly weapon.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

## II.    Procedural History of Petition

On March 14, 2022, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exercise dependency jurisdiction over Perla because mother's substance abuse placed Perla at substantial risk of serious physical harm, thereby rendering jurisdiction appropriate under subdivision (b) of section 300.

The juvenile court had exerted dependency jurisdiction over all seven of mother's other children.  All seven had been removed from mother's custody; six were eventually placed in legal guardianships and the seventh put up for adoption after mother's parental rights were terminated as to him.

On May 20, 2022, the juvenile court held a jurisdictional hearing and sustained the petition.

On October 20, 2022, the juvenile court held a dispositional hearing.  The court removed Perla from mother's custody and bypassed reunification services for mother in light of her inability to reunify with all seven of Perla's older siblings.  The court placed Perla with two maternal cousins, and issued a protective order requiring mother to stay away from Perla and her caregivers.  The court then set the matter for a permanency planning hearing.

On December 20, 2022, the juvenile court granted a permanent restraining order against mother, protecting Perla and her caregivers.

On April 20, 2023, the juvenile court terminated mother's parental rights over Perla, naming the maternal cousins as the prospective adoptive parents.

**III. Facts Pertinent to Perla's Status as an Indian Child**

Mother was repeatedly asked whether she had any Indian heritage, and she on three different occasions consistently denied having any.

Father was asked if he had Indian heritage; he also denied having any.

Both father and mother also filled out the written ICWA-020 form attesting that they had no Indian ancestry.

The Department asked several of mother's relatives whether Perla might be an Indian child—namely, (1) the maternal cousins who took custody of Perla, and (2) the maternal grandfather and his wife. All of them denied any possible Indian heritage. The maternal grandmother could not be asked because she had passed away.

The Department also asked the paternal grandmother, and she denied any Indian heritage from her side or from paternal grandfather's side.

Throughout the proceedings, the juvenile court repeatedly ordered the Department to inquire of maternal and paternal relatives about Perla's potential Indian heritage. On the basis of the information set forth above, the court ultimately ruled that it had no reason to believe Perla was an "Indian child" within the meaning of ICWA.

**IV. Appeal**

Mother filed this timely appeal.

## DISCUSSION

Mother argues that the juvenile court erred in finding that it had no reason to believe Perla was an Indian child because the Department's initial inquiry into Perla's Indian heritage was defective. Specifically, mother faults the Department for not

inquiring of (1) the maternal great-uncle, (2) the paternal grandfather, and (3) the four maternal aunts.[2]

ICWA and corresponding statutes that our Legislature enacted to implement ICWA assign the juvenile court and the Department "three distinct duties" aimed at assessing whether a child in a dependency action is an "Indian child," and hence a child who should not be separated from their tribal family through adoption or foster care placement. (§§ 224.2, 224.3; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; *Miss. Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32.) Only the first duty is at issue here—namely, the initial "duty" of the Department and the juvenile court "to inquire whether [a] child is an Indian child." (§ 224.2, subds. (a) & (b).) The Department discharges this duty by "asking" family members "whether the child is, or may be, an Indian child." (*Id.*, subd. (b).) For these purposes, an "Indian child" is a child who (1) is "a member of an Indian tribe," or (2) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); Welf. & Inst. Code, § 224.1, subd. (a).) The Department's duty to inquire extends not only to the child's parents, but also to others, "includ[ing] . . . extended family members." (§ 224.2, subd. (b).) For its part, the juvenile court is required, "[a]t the first appearance" in a dependency case, to "ask each participant present . . . whether the participant knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).)

---

[2] Mother also faults the Department for not asking a "*paternal* cousin," but there is no paternal cousin. (Italics added.) The reference to paternal cousin was a typo; it should have read "maternal cousins." As noted above, the Department *did* inquire of the maternal cousins, who indicated that Perla had no Indian heritage.

Although ICWA obligates the Department to inquire of the child's "extended family members," California courts have not construed the Department's duty of initial inquiry to *always* require an inquiry of *every* extended family member. To the contrary, the Department discharges its duty of initial inquiry as long as its interviews "'reliably answer[]' the question of whether the child[ is a] Native American child[]." (*In re E.W.* (2023) 91 Cal.App.5th 314, 323; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1009); accord, *In re K.H.* (2022) 84 Cal.App.5th 566, 603-604 (*K.H.*) [duty is discharged if Department's "inquiry . . . extend[s] far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered"].) Mother urges us to ignore this consistent line of authority in favor of a rule requiring an exhaustive inquiry of every possible relative—and, because the statute only "includes" but is not limited to extended family members, anyone else who might know the child—who can be tracked down; we decline to do so.

## I. The Department Complied With Its Initial Duty of Inquiry

The Department's initial inquiry into Perla's possible Indian heritage was sufficiently thorough to allow the Department to "reliably answer[]" the question of whether there was reason to believe she might be an Indian child. Although it is insufficient merely to inquire of a child's parents (*K.H.*, *supra*, 84 Cal.App.5th at p. 605), the Department here went far beyond that—asking the maternal grandfather and his wife, the paternal grandmother, and the maternal cousins who took custody of Perla. All of them said the same thing: There is no Indian heritage. This inquiry was sufficient.

6

Mother asserts that the Department should have also asked the maternal great-uncle, the paternal grandfather, and the four maternal aunts, but provides no explanation why inquiry of these individuals was necessary to an adequate inquiry given that the people the Department did interview—the parents and grandparents—*were* in as good, if not better, a position to know of Perla's possible heritage. Indeed, the paternal grandmother told the Department she knew of no basis for believing the paternal grandfather had any Indian heritage.

## II. Any Error Is Harmless

In *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578 (*Dezi C.*), our Division held that "an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Id.* at p. 779.)

Here, the record contains no information suggesting a reason to believe that Perla may be an Indian child. Mother and father denied having any Indian heritage, as did several relatives on both sides of the family. Further, Perla's seven older half siblings have all been, or currently are, juvenile dependents and the court in each case determined that none of *them* was an Indian child. (E.g., *In re Charles W.* (2021) 66 Cal.App.5th 483, 490-492 [holding that a prior finding of no ICWA concerns as to sibling means deficiencies in ICWA inquiry as to subsequent

7

sibling were harmless]; *In re E.W.* (2009) 170 Cal.App.4th 396, 400-402 [same as to half sibling]; *In re J.M.* (2012) 206 Cal.App.4th 375, 383 [same].)  Mother offers nothing in the trial court record or on appeal to suggest that further inquiry would turn up any different conclusion.

Mother urges us to disregard *Dezi C.*  We will not, as it is still pending before the Supreme Court.

## DISPOSITION

The juvenile court's order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

8